# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANDREW PERRONG, individually and on behalf of a class of all persons and entities similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>CONSTELLATION ENERGY CORPORATION and ALLIANCE SHAREHOLDER COMMUNICATIONS, LLC,<br><br>        Defendants. | Case No. 1:22-CV-00830-DLB |

## MEMORANDUM IN SUPPORT OF DEFENDANT ALLIANCE SHAREHOLDER COMMUNICATIONS, LLC'S
## <u>MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>

Defendant Alliance Shareholder Communications, LLC ("Alliance") files this Memorandum in Support of its Motion to Dismiss Plaintiff Andrew Perrong's ("Plaintiff") Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

When the TCPA was implemented in 1991, Congress found that "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices." [TCPA] of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (codified at 47 U.S.C. § 227). But this balance was not achieved, resulting instead in an overly broad statute that regulated a wider variety of calls than was ever needed to protect consumer privacy. A number of content-specific exemptions were included or added to try to trim it down to size, but these exemptions do not pass strict scrutiny and cannot be severed. Because the TCPA is an unconstitutional law, Alliance cannot be held liable for conduct that allegedly occurred under it.

As detailed below, the Telephone Consumer Protection Act ("TCPA") is unconstitutional, and for at least three separate reasons:

First, the statute contains content-specific exemptions that render the TCPA unconstitutional following the Supreme Court's reasoning in *Barr v. Am. Ass'n of Political Consultants, Inc.,* 140 S. Ct. 2335, 2347 (2020) ("*AAPC*").

Second, and relatedly, the statute is an overly broad restriction on constitutional speech that needlessly limits lawful and honest communications of the sort at issue here.

Finally, the TCPA—as applied to Alliance—is void for vagueness as to the phrase "any service for which the called party is charged for the call." Since Alliance could not know at the time its call was placed whether or not the call would be received on a non-cellular service resulting in a charge to the Plaintiff, the statute cannot be enforceable based on the facts alleged in this suit.

Thus, the statute cannot be enforced against Alliance, and the Court should dismiss the Complaint with prejudice for failure to state a claim.

I.      **PLAINTIFF'S ALLEGATIONS**

Plaintiff's Complaint ("Complaint") attempts to state a claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), alleging that Plaintiff received a single prerecorded call from Alliance on March 24, 2022 without consent. Compl. ¶ 22.

Constellation Energy Corporation ("Constellation") allegedly engaged Alliance to contact Constellation's individual shareholders as part of a program whereby it would repurchase its stock from willing shareholders. Compl. ¶¶ 18-19. Plaintiff alleges he received a pre-recorded message from Alliance as part of this program on March 24, 2022. Compl. ¶ 22.

The pre-recorded message stated "Good day, you recently received information in the

mail regarding a voluntary program being offered to shareholders owning fewer than 100 shares of Constellation Energy common stock. This provides an opportunity to conveniently sell your shares of Constellation Energy to sell your shares through this program. Your properly completed acceptance card must be received by April 27, 2022. All terms in this program are contained in the letter that was recently mailed to you. If you have any further questions, please press one now to speak to a representative or if you've received this message on your voicemail, you may contact Alliance Shareholder Communications LLC, the manager of this program, toll free at 1-800-574-6107 between the hours of 9am and 5pm. Eastern time Monday through Friday. As a reminder, the program expires on April 27, 2022. Thank you and have a great day." Compl. ¶ 28.

Plaintiff's number was assigned to a VoIP telephone service, which charges for each call it receives. Compl. ¶ 23-25. Alliance is not alleged to have known this was the case. *See generally Plaint. Compl.*[1] For the reasons set forth below, these facts illustrate the unconstitutional nature of the TCPA, and as such why the Court should dismiss Plaintiff's claim against Alliance.

## II. LEGAL STANDARD

A complaint that "fail[s] to state a claim upon which relief can be granted" is subject to dismissal under Rule 12(b)(6). Under this rule, a complaint should be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A complaint brought pursuant to an unconstitutional statute does not state a plausible claim. *See Cunningham v. Matrix Fin. Services, LLC,* 531 F. Supp. 3d 1164, 1180 (E.D. Tex. 2021) (for the proposition that a plaintiff's suit cannot continue when its asserting claims under

---

[1] As a factual mater, it did not.

3

an unconstitutional statute.); *see also Creasy v. Charter Communications, Inc.,* 489 F. Supp. 3d 499, 511 (E.D. La. 2020), judgment entered, No. CV 20-1199, 2020 WL 7646640 (E.D. La. Dec. 23, 2020) ("An unconstitutional statute being "as no law," the Court may not enforce the pre-AAPC version of § 227(b)(1)(A)(iii) against [defendant] here.")

## III. ARGUMENT

### A. The TCPA Is Facially Unconstitutional And Cannot Be Enforced Against Alliance Because Content-Specific Restrictions on Speech Are Unenforceable Post AAPC.

Content-specific restrictions on speech are subject to strict scrutiny and are presumptively not constitutional. *AAPC*, 140 S. Ct. at 2347. In that case, the Supreme Court struck down a content-specific exemption to the TCPA—the government-backed debt exemption—in order to uphold he TCPA's broader constitutionality. However, as demonstrated below, there are a number of content-specific exemptions to the TCPA that remain in place and that have not been stricken.

*AAPC's* severance of the government-debt exemption clearly demonstrates that content-specific exemptions to the TCPA raise major constitutional concerns and must be addressed. However, the TCPA contains multiple content-specific exemptions that were not raised or considered by the Court in *AAPC*. The presence of those exemptions renders the TCPA, in its present form, unconstitutional. This Court should not enforce the statute against Alliance, therefore, unless or until the exemptions are stricken from the statute. If the exemptions cannot be stricken, then the restriction cannot be enforced.

#### 1. The TCPA is Riddled with Content-Specific Exemptions.

A law is content-based if "a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys. *AAPC*, 140 S. Ct. at 2346.

The TCPA itself is, by nature, a content-specific restriction on speech: its purpose is to restrict and create differential treatment for communications that constitute marketing or solicitations. The text of the TCPA, and the FCC's implementation of it, contains numerous content-specific restrictions that were not severed (or addressed) in *AAPC*. These include exemptions for: i) emergency calls;[2] ii) "autodialed or prerecorded message calls by a wireless carrier to its customer when the customer is not charged";[3] iii) certain healthcare-related calls;[4] iv) certain package-delivery notifications;[5] v) schools to communicate with students and parents;[6] and vi) certain messages by banks pertaining to fraud.[7] Additionally, the requirement of a higher level of consent for calls made for a marketing purpose rather than calls made for an informational purpose creates another content-specific distinction.[8] Like the government-backed debt exemption at issue in *AAPC*, each and every one of these exemptions renders the TCPA an unconstitutional content-specific restriction on speech. *AAPC*, 140 S. Ct. at 2347; *Reed v. Town of Gilbert*, 576 U.S. 155, 162 (2015).

### 2. The Content-Specific Exemptions Do Not Survive Strict Scrutiny.

To determine if a content-specific restriction withstands strict scrutiny, the reviewing court "must identify with care the interests the State itself asserts" and may not "supplant the precise interests put forward by the State with other suppositions." *Edenfield v. Fane*, 507 U.S. 761, 768 (1993). The burden is on the party defending a content-specific restriction to advance

---

[2] 47 U.S.C. § 277(b)(1)(A).
[3] 77 Fed. Reg. 34233, 34236 (June 11, 2012).
[4] 47 C.F.R. § 64.1200(a)(3)(v).
[5] *Cargo Airline Ass'n*, 29 FCC Rcd 3432, 3437-3438 (2014).
[6] *Rules & Regs. Implementing [TCPA] of 1991*, CG Docket No. 02-278, FCC 16-88 (Aug. 4, 2016).
[7] *Rules & Regs. Implementing [TCPA] of 1991*, 30 FCC Rcd 7961, 8025 (2015).
[8] *Id.* at 7968.

5

evidence that the harms Congress identified are real. *Id.*; *Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n*, 447 U.S. 530, 543 (1980) ("Mere speculation of harm does not constitute a compelling state interest."). In *AAPC*, the Supreme Court recently conceded that "collecting government debt"— though a "worthy goal"— "cannot satisfy strict scrutiny." 140 S. Ct. at 2347.

Similarly, none of the other content-specific exemptions remaining in the TCPA can survive strict scrutiny. Even the "emergency purposes" exemption, which comes closest, is so ephemeral as to remain both an under- and over-inclusive restriction on speech. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The others do not come close. While many of the FCC's exemptions—i.e., healthcare, package delivery, or fraud notification messages—look at urgency or the need for time-sensitive communication, they can hardly be considered "narrowly tailored" to a "compelling" governmental interest. *See Reed*, 576 U.S. at 163.

### 3. The TCPA's Additional Content-Specific Exemptions Should Not—and Cannot—Be Severed to Save the Statute as Applied to Alliance.

The Supreme Court adopted a novel approach to a difficult problem in *AAPC*. The TCPA's content-specific government-debt exception (like the many content-specific exceptions discussed above) plainly did not survive First Amendment scrutiny. Yet, while existing precedent suggested the First Amendment only moved "one way"—i.e., toward protecting speech—the Court recognized that the First Amendment sometimes operates merely as an ironing board: assuring that individuals are permitted to speak equally. *See AAPC*, 140 S. Ct. at 2346. As *AAPC* represents the Supreme Court's first pass with this new doctrine, the limits of its application have not yet been explored. While *AAPC* certainly forecloses any argument that the TCPA is unconstitutional due to the single content-specific exception addressed in that case, nothing in the *AAPC* ruling mandates that a statute containing numerous content-specific exceptions should always survive constitutional scrutiny.

Here, for instance, in order to save the TCPA, this Court would have to sever the *seven* separate exemptions discussed above. The Court severed the single exemption in *AAPC* in recognition that Congress likely intended that result, since that exemption was a bolt-on provision added late in the statute's life. *See* 140 S. Ct. at 2356. But many of the TCPA's other content-specific exemptions have existed for much longer and have persisted through multiple amendments to the statute.[9] There is no basis to conclude that Congress's intent would be to uphold the TCPA if its provisions were applied with complete uniformity to marketers and debt collectors on the one hand and schools, hospitals, delivery companies, and banks delivering fraud notifications on the other.

Moreover, there remains significant doubt that this Court could sever the TCPA exemptions even if it wanted to, as the Hobbs Act appears to deprive courts of jurisdiction to sever FCC exemptions.[10] If the exemptions cannot be severed, the statute is unconstitutional due to its numerous content-specific restrictions that do not survive strict scrutiny, and cannot be saved.

Finally, and most basically, *AAPC's* recognition that the First Amendment is "a kind of Equal Protection Clause for ideas" is at tension with basic concepts of free speech and due

---

[9] The TCPA was amended in 2003 and again in 2015. *See* CG Docket No. 02-278, FCC 03-153, 68 Fed. Reg. 44144, 44144-44179 (July 25, 2003); Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584; *see, e.g.,* 77 Fed. Reg. at 34235.

[10] Although the application of the Hobbs Act as a bar to judicial review of agency action was in some doubt following the Supreme Court's ruling in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.,* 139 S. Ct. 2051, 2054-56 (2019), courts have noted that litigators "cannot place much reliance on the opinion, because all it did was remand the case to the lower courts in order to address two 'preliminary issues,'" and "the Seventh Circuit instructs that district courts must presume the agency actions are 'valid.'" *Ind. R.R. Co. v. Ill. Com. Comm'n*, 491 F. Supp. 3d 344, 349-50 (N.D. Ill. 2020) (quoting *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449 (7th Cir. 2010)).

process. *See AAPC*, 140 S. Ct. at 2354 (citation omitted). The First Amendment does not assure equal speech; it assures free speech. And while Alliance does not dispute *AAPC's* holding that severance is an appropriate remedy in some cases—such as to assure that certain favored speakers are brought back within the restrictions that apply to everybody else—where, as here, so much speech is being excepted from liability on a content-specific basis, it demonstrates that the restriction on speech itself was overly broad to begin with and a different remedy ought to apply.

*AAPC* squarely compels a determination that the TCPA's numerous content-specific exemptions must be struck down unless they survive strict scrutiny, which they do not. Alliance, therefore, is entitled to one of two remedies: i) either all of the TCPA's content-specific restrictions must be struck down and the statute must be expanded to apply uniformly; or ii) the TCPA must be struck down as an overly broad and unconstitutional restriction on speech. In the absence of any evidence that Congress would want the restrictions of the TCPA to apply so broadly—and given the Court's likely lack of jurisdiction to sever FCC exemptions under the Hobbs Act— Alliance submits that the second course is the most prudent and appropriate.

    **B.    The TCPA Is Overly Broad As Applied to Alliance in this Case Because its Calls Were Not Marketing in Nature And Were Targeted to Specific Stockholders for Buyback Purposes.**

The TCPA applies to constitutionally protected speech. Under normal First Amendment doctrine, this sort of statute would be plainly unconstitutional as overly broad. *See, e.g., Gooding v. Wilson*, 405 U.S. 518, 520 (1972) (a statute may withstand an overbreadth attack "only if, as authoritatively construed . . . , it is not susceptible of application to speech . . . that is protected by the First and Fourteenth Amendments"); *Martin v. City of Struthers*, 319 U.S. 141, 146-47 (1943) ("Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health

regulations of time and manner of distribution, it must be fully preserved."). The only reason the TCPA is not viewed as definitively violative of the First Amendment is because it is purportedly a content-neutral time-place-manner restriction. *See, e.g., Strickler v. Bijora, Inc.*, No. 11 CV 3468, 2012 U.S. Dist. LEXIS 156830, at *16-21 (N.D. Ill. Oct. 30, 2012).

Just like the ordinance banning door-to-door sales in *Martin*—which was struck down as unconstitutional, *see* 319 U.S. at 149—the TCPA seeks to limit speech on the basis of avoiding nuisance. The Court in *Martin* took a hardline approach in protection of free speech, finding that "[t]he dangers of distribution can so easily be controlled by traditional legal methods, leaving to each householder the full right to decide whether he will receive strangers as visitors, that stringent prohibition can serve no purpose but that forbidden by the Constitution, *the naked restriction of the dissemination of ideas*." *Id*. at 147 (emphasis added). In other words, *Martin* loosely set the framework for a national "do-not-call" list—permitting callers to request their numbers not be called—but categorically rejected any framework that prevented callers from making calls for lawfully-protected purposes in the first instance.

In reaching this conclusion, the *Martin* court considered those arguments commonly presented in favor of the TCPA's restrictions on speech, and clearly rejected them:

> Ordinances of the sort now before us may be aimed at the protection of the householders from annoyance, including intrusion upon the hours of rest, and at the prevention of crime. Constant callers, whether selling pots or distributing leaflets, may lessen the peaceful enjoyment of a home as much as a neighborhood glue factory or railroad yard which zoning ordinances may prohibit. In the instant case, for example, it is clear from the record that the householder to whom the appellant gave the leaflet which led to her arrest was more irritated than pleased with her visitor. The City, which is an industrial community most of whose residents are engaged in the iron and steel industry, has vigorously argued that its inhabitants frequently work on swing shifts, working nights and sleeping days so that casual bell pushers might seriously interfere with the hours of sleep although they call at high noon. In addition, burglars frequently pose as canvassers, either in order that they may have a pretense to discover whether a house is empty and hence ripe for burglary, or for the purpose of spying out the premises in order that they may return later Crime prevention may thus be the purpose of regulatory ordinances.

> While door to door distributers of literature may be either a nuisance or a blind for criminal activities, they may also be useful members of society engaged in the dissemination of ideas in accordance with the best tradition of free discussion. The widespread use of this method of communication by many groups espousing various causes attests its major importance. [...] Of course, as every person acquainted with political life knows, door to door campaigning is one of the most accepted techniques of seeking popular support, while the circulation of nominating papers would be greatly handicapped if they could not be taken to the citizens in their homes. Door to door distribution of circulars is essential to the poorly financed causes of little people.

*Id*. at 144-46 (emphasis added). In weighing the very same concerns commonly raised in favor of the TCPA—prevention of nuisance, fraud, crime and privacy—the Supreme Court ruled squarely and authoritatively that the right to distribute constitutionally-protected speech overcomes all.[11]

Applying the reasoning of *Martin*, it becomes clear that none of the problematic content-specific exemptions described above would be needed if the TCPA were not inherently, and unconstitutionally, overbroad.

Here, as demonstrated by its numerous carve-outs, the TCPA is not narrowly tailored to a compelling government interest, but instead is fashioned extremely broadly to cover both *wanted* and *unwanted* calls alike, and in doing so paints the sort of expected, normal, accurate and important communications intended for Alliance's shareholders with the same broad brush that the TCPA would treat scam calls and spam notifications.[12] The overbreadth of the statute has converted the FCC into a *de facto* licenser of speech—determining who is worthy of speaking,

---

[11] *Martin* remains good law, although First Amendment case law has, admittedly, advanced since *Martin* was decided, and a body of law focused on content-specificity vs. content-neutrality has created a new dichotomy that carries through most recent First Amendment decisions. *See, e.g., AAPC*, 140 S. Ct. at 2346-47.

[12] While the statute affords a defense for "consented" calls, *see* 47 U.S.C. § 227(b)(1)(A), not all uninvited calls are unwanted, or vice versa.

and who is not.

Thus, while *AAPC* counsels that an examination of the constitutionality of the exemptions is sometimes important, *Martin* reminds us that it may be the restriction itself that is the problem. The FCC's content-specific carve-outs do not further the underlying purpose of the statute—to protect consumer privacy—but rather reflect that certain calls regulated by the statute did not infringe upon that interest to begin with. And that means the TCPA was always unconstitutionally overbroad to begin with.

Indeed, the TCPA was explicitly never intended to "be a barrier to the normal, expected or desired communications between businesses and their customers," H.R. Rep. 102-317 (1991), and in its first Report and Order seeking to implement the TCPA, the FCC emphasized that "legislative history indicates that the TCPA does not intend to unduly interfere with ongoing business relationships." *Rules & Regs. Implementing [TCPA] of 1991*, CG Docket No. 92-90 (Oct. 16, 1992). Yet those are exactly the types of calls that are at issue here, as Alliance was merely engaged by Constellation to make contact with its shareholders in an attempt to inquire into each shareholder's willingness to participate in the buyback program. The statute's inherent overbreadth unfairly punishes Alliance for lawful attempts to contact Constellation's shareholders on its behalf, in exactly the type of "normal, expected, or desired communications" that were intended to remain protected, while rewarding other callers with the various content-specific carve-outs described above. Because these calls were never intended to be subject to the prohibitions of the TCPA in the first place, Alliance should not be punished for its legitimate attempts to contact the Constellation shareholders.

In short, the TCPA creates a chokehold on speech so severe that the FCC has been forced to create serial content-specific exemptions to take the pressure off. That the FCC has not yet

held that the specific calls Alliance is making are not entitled to the sort of special treatment it has afforded other callers should not mean that Alliance's normal and expected messages on behalf of Constellation are rendered illegal whereas those by a package delivery company, or by a healthcare organization are not. The First Amendment compels all such commercial speakers to be treated equally when they are engaging in lawful speech. It is time that the TCPA's exceptional and overly broad restrictions on protected speech be abandoned wholesale, with Congress left to enact a lawful statute in compliance with the First Amendment.

      **C.    The TCPA Is Void for Vagueness as Applied to Alliance In this Case Because There Was No Way For Alliance To Know That The Calls At Issue Were Being Made To A Service for Which Plaintiff Was Charged.**

Lastly, the TCPA is also unconstitutional under the related concept "void for vagueness." The Constitution demands that statutes be set forth with "sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson,* 461 U.S. 352, 357 (1983). Such precision is essential to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972); *see also Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S. Ct. 1686, 1688, 29 L. Ed. 2d 214 (1971) (Explaining that the contested statute is unconstitutionally vague in that it subjects those exercising constitutional conduct to an unascertainable standard, such that "men of common intelligence must necessarily guess at its meaning"). In particular, exacting precision is required of restrictions in the context of protected expression. *See Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 871-72 (1977) (explaining that the vagueness of a "content-based regulation of speech…raises special First Amendment concerns because of its obvious chilling effect on free speech"); *NAACP v. Button,* 371 U.S. 415, 433 (1963). The TCPA, as currently written, fails to provide these basic constitutional

protections.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned,* 408 U.S. at 108. Even in a facial vagueness challenge, the ordinance need not be vague in all applications to be void if it reaches a "substantial amount of constitutionally protected conduct." *Kolender,* 461 U.S. at 359, n.8 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 (1982)). The need for definiteness is greater when the ordinance implicates constitutionally protected rights rather than when it regulates the economic behavior of business. *Village of Hoffman Estates*, 455 U.S. at 498, *see also Accounting Outsourcing, LLC, et al. v. Verizon Wireless Personal Commc'ns, L.P.,* 329 F. Supp. 2d 789, 805 (M.D. La. 2004) ("[B]ecause the TCPA regulates constitutionally protected commercial speech, it must satisfy a more rigid vagueness test, such that even one impermissible application would render the TCPA vague."); *see also United Food & Commercial Workers Local 99 v. Bennett*, 934 F. Supp. 2d 1167, 1205 (D. Ariz. 2013) (applying a more stringent vagueness analysis because the regulation at issue involved the freedom of assembly, a right protected by the First Amendment.)

The portion of the TCPA at issue, Section 227(b)(1)(A)(iii), makes a caller liable for contacting a telephone number assigned to a service that charges the called party for the call. Plaintiff does not allege that Alliance knew—or could have known—that Plaintiff was charged (some fraction of a cent) for the call it made to the Plaintiff. As a factual matter it could not.

While a caller may be able to determine whether or not a call is assigned to a wireless carrier—*see generally Breda v. Cellco Partnership, LLC,* Nos. 17-2196, 18-1010 (1st Cir. Aug. 15, 2019)—it can make no such determination with respect to whether the called party is charged for the call. Thus, at the time Alliance attempted its call there was no way for it to know whether

or not its speech—which was otherwise honest and truthful—was lawful, or not. The lawfulness of its speech turned entirely based upon facts and circumstances that were outside of its knowledge. *See* e.g. *Lytle v. Doyle*, 326 F.3d 463, 469 (4th Cir. 2003) ("[T]he vagueness that dooms this ordinance is not the product of uncertainty about the normal meaning of [the term at issue], but rather about what specific conduct is covered by the statute and what is not." (internal quotation marks and citation omitted)).

This is a classic situation where a statute is void for vagueness. For instance, in *Lytle,* the Court struck down an ordinance prohibiting "loitering" where the Defendant would have no knowledge that the expressive conduct engaged in might constitute "loitering." *Id.* At 470. Similarly in *Manning v. Caldwell for City of Roanoke*, 930 F. 3d 264 (4th Cir. 2019) the Fourth Circuit Court of Appeals struck down an ordinance prohibiting "habitual drunk[eness]" as void for vagueness because there was no way for a Defendant to know whether their drunkenness was sufficiently "habitual." *Manning* at 275-276. In both of these instances, the Fourth Circuit Court of Appeals struck down a statute where there was simply no way for a Defendant to determine whether or not their conduct was legal at the time it was engaged in. The same is true here.

*Wilson v. PL Phase One Operations L.P.,* 422 F. Supp. 3d 971 2019 WL 4735483 (D. Md. 2019) does not compel a different result. There a district court in Maryland determined a different portion of the TCPA was not void for vagueness. The essence of the analysis was that a person of reasonable intelligence could determine whether or not their system was subject to the TCPA. *Id.* at 982. But that circumstance is wholly different from the vagueness challenge here. In *Wilson* all *facts* attendant to the determination of liability were in the Defendant's possession—the Defendant was simply unclear what interpretation of the law would be applied to it.

While the *Wilson* Defendant also had a strong—although ultimately rejected—void for

vagueness challenge, Alliance's challenge is stronger. Here Alliance lacks what the *Wilson* defendant possessed—knowledge of the critical facts and circumstances on which liability turns. Because there is no way for Alliance to have known whether or not its speech was legal at the time it was made, the TCPA is void for vagueness as applied to it. *Lytle* at 470, *Manning* at 275-276.

## IV. CONCLUSION

For the foregoing reasons, Alliance respectfully requests that the Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

Dated: August 16, 2022

Respectfully submitted,

 */s/ William M. Krulak, Jr.*
**MILES & STOCKBRIDGE P.C.**
William M. Krulak, Jr. (Fed. Bar No. 26452)
100 Light Street
Baltimore, Maryland 21202
(410) 385-3448
wkrulak@milesstockbridge.com

Eric Troutman (*pro hac vice*)
530 Technology Drive
Suite 200
Irvine, CA 92618
Telephone: (949) 350-3663
Facsimile: (949) 203-8689
troutman@troutmanfirm.com

*Counsel for Defendant Alliance*
*Shareholder Communications, LLC*