IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANDREW PERRONG, *individually and on behalf of a class of all persons and entities similarly situated*, | * |
| | * |
| Plaintiffs, | * |
| v. | * Case No. 1:22-CV-00830-DLB |
| CONSTELLATION ENERGY CORPORATION and ALLIANCE SHAREHOLDER COMMUNICATIONS, LLC, | * |
| | * |
| Defendants. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF
CONSTELLATION ENERGY CORPORATION'S MOTION TO DISMISS**

Defendant Constellation Energy Corporation ("Constellation"), pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submits this memorandum of law in support of its motion to dismiss the Class Action Complaint ("Complaint") filed by Plaintiff, Andrew Perrong ("Perrong"), because it fails to state a claim against Constellation upon which relief can be granted. In support, Constellation states as follows:

**INTRODUCTION**

This case stems from a single prerecorded message Alliance Shareholder Communications, LLC ("Alliance") allegedly made to Perrong on March 24, 2022. Compl. ¶¶ 22, 28. According to the message from Alliance, the call was intended for shareholders owning fewer than 100 shares of Constellation common stock. Compl. ¶ 28. Perrong, however, claims that he does not own any Constellation shares. Compl. ¶ 29. Based on that single call from Alliance, Perrong filed this

1

putative class action under the Telephone Consumer Protection Act ("TCPA") against both Alliance and Constellation.

Parties like Constellation who did not "make" a phone call generally have no liability under the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(iii); *see also* Compl. ¶ 12. The exception is when there is an agency relationship, which may subject a principal to vicarious liability for calls placed by an agent. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016).

Here, the Complaint fails to plead facts establishing an agency relationship between Constellation and Alliance. While the Complaint uses agency "buzzwords," it pleads no facts to back them up. First, there are no facts supporting the key component of actual authority: Constellation's exercise of control over Alliance. To the contrary, the Complaint alleges that Alliance was the "manager" of the program it called Perrong about, establishing that Alliance controlled its own calling. Compl. ¶ 28. Second, there are no facts supporting the essential element of apparent authority: a manifestation *from Constellation* to Perrong creating the reasonable belief that Alliance was Constellation's agent. Alleged representations *from Alliance* to Perrong are insufficient as a matter of law to create apparent authority.

Because the Complaint fails to allege facts establishing an agency relationship between Constellation and Alliance, Perrong's claim against Constellation should be dismissed.

## FACTUAL ALLEGATIONS

Perrong claims that on March 24, 2022, he received a single prerecorded message call from Alliance. Compl. ¶¶ 22, 28. The message from Alliance indicated that Perrong should have "recently received information in the mail regarding a voluntary program being offered to shareholders owning fewer than 100 shares of Constellation Energy common stock." Compl. ¶ 28.

Pursuant to the program, shareholders could "conveniently sell" their Constellation shares. *Id.* According to Perrong, he is not a Constellation shareholder. Compl. ¶ 29.

The message from Alliance indicated that Alliance was the "manager of this program," and that questions regarding the program should be directed to Alliance. Compl. ¶ 28. Perrong alleges that after receiving Alliance's message, he contacted Alliance. Compl. ¶ 30. Perrong alleges that during that call, he "inquired how [Alliance] obtained his phone number to make the pre-recorded call." Compl. ¶ 31. The Complaint contains contradictory allegations regarding Alliance's response to that question. In the Complaint's "Factual Allegations," Perrong asserts that Alliance "did not respond" to his question. Compl. ¶ 32. But in the portion of the Complaint attempting to establish Constellation's supposed liability for Alliance's conduct, the Complaint asserts that Alliance responded to Perrong's question by declaring that Constellation had "hired" Alliance and "provided" Perrong's number. Compl. ¶ 40.

Though Alliance described itself as the "manager" of the program it called Perrong about (Compl. ¶ 28), the Complaint also contains conclusory assertions that Alliance was acting as an "agent" of Constellation, and that Constellation "maintained interim control over" Alliance's actions. Compl. ¶¶ 19, 37, 38. The Complaint does not contain any factual allegations supporting these conclusory assertions, and Constellation disputes that these unsupported statements are true.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Iqbal*, 556 U.S. at 678.

This first step in determining whether the plaintiff has stated a plausible claim is identifying which allegations are accepted as true. *Beach v. Wal-Mart Stores, Inc.*, No. 8:11-CV-01437-AW, 2012 WL 395316, at *2 (D. Md. Feb. 6, 2012) (citing *Iqbal*, 556 U.S. at 677–80). Although a court must accept all well-pleaded factual allegations as true, it need not accept unsupported legal allegations, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events. *Beach*, 2012 WL 395316, at *2. Inconsistent factual allegations are also not entitled to the assumption of truth. *Id.* at *4.

After determining which factual allegations are presumed true, a court must determine whether the well-pleaded facts state a plausible claim for relief. *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (internal quotations omitted)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotations omitted)).

Here, the Complaint's allegations fall far short of what is required to establish a plausible claim for relief against Constellation.

## ARGUMENT

### I. The Complaint Fails to State a Claim Against Constellation.

Perrong's claim against Constellation should be dismissed because the Complaint fails to allege facts sufficient to establish an agency relationship between Constellation and Alliance.

As an initial matter, Constellation has no direct liability under the TCPA because it did not "make" the call at issue. Perrong has asserted a violation of 47 U.S.C. § 227(b)(1)(A)(iii), which declares it unlawful "to make" certain calls. Compl. ¶ 12. Courts routinely hold that the verb "to make" in 47 U.S.C. § 227(b)(1)(A)(iii) imposes direct liability only upon the party that physically places the call or text message.[1] As Perrong recognizes, Constellation did not "make" the call at issue; Alliance did. Compl. ¶ 2.

Because Constellation did not make the call to Perrong, Perrong's claim cannot proceed against Constellation unless Constellation is subject to vicarious liability under federal common law principles of agency.[2] As far as Constellation can tell from the Complaint's sparse vicarious liability allegations, Perrong seems to be advancing two theories of agency: actual authority and apparent authority. *See* Compl. ¶ 38 (referring to "interim control," an element of actual authority); Compl. ¶ 41 (mentioning apparent authority when describing the *Dish Network* ruling).

Actual authority is created when the principal expressly grants the agent the authority to perform a particular act, whether through words or conduct. *In re Monitronics Int'l, Inc.*, 223 F.

---

[1] *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014) (finding no direct liability under 47 U.S.C. § 227(b)(1)(A)(iii) because Taco Bell was not "the actual sender of the text"); *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015) (explaining that "[b]y its terms, 47 U.S.C. § 227(b)(1)(A)(iii), assigns civil liability only to the party who 'makes' a call"); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440 (VEC), 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) (explaining that "many of the courts that have considered [47 U.S.C. § 227(b)(1)(A)(iii)] have held that the verb 'make' imposes civil liability only on the party that places the call or text") (collecting cases).

[2] *Campbell-Ewald*, 577 U.S. at 168 (recognizing, for a claim under 47 U.S.C. § 227(b)(1)(A)(iii), that "the Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations" (citing *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013) ("*Dish Network*")); *Worsham v. Travel Options, Inc.*, No. JKB-14-279, 2016 WL 4592373, at *5 (D. Md. Sept. 2, 2016) (citing *Dish Network* and explaining that "[t]he FCC has ruled that vicarious liability for TCPA violations may exist under federal common-law principles of agency"); *see also Jackson*, 88 F. Supp. 3d at 135–38 (explaining the "multiple and varying rationales" courts have used to hold that vicarious liability exists under the TCPA).

Supp. 3d 514, 520 (N.D.W. Va. 2016); *see also Georgetown Steep Corp. v. Union Carbide Corp.*, Nos. 88-2884, 88-2979, 1989 WL 156888, at *11 (4th Cir. 1989) (per curiam) (unpublished) ("Before an agency relationship can exist, the principal must intend that the agent shall act for him, and the agent must intend to accept the authority and act on it, and the intention of the parties must find expression either in words or conduct between them.") (internal quotations omitted). Moreover, "[t]he cornerstone of an agency relationship is the power of the principal to control the conduct of his agent." *Georgetown Steel Corp.*, 1989 WL 156888, at *11 (citing *Sharpe v. Bradley Lumber Co.*, 446 F.2d 152, 153 (4th Cir. 1971)).

In contrast, "[a]pparent authority results from a principal's manifestation of an agent's authority to a third party, regardless of the actual understanding between the principal and agent." *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 230 (4th Cir. 1996). Apparent authority exists where "a principal, through his acts or omissions, causes a third party, in good faith and in the exercise of reasonable prudence, to rely on the agent's authority to act on the principal's behalf . . . ." *Id.*

The Complaint fails to allege sufficient facts to establish either type of agency relationship between Constellation and Alliance. First, many of the Complaint's agency allegations are conclusory assertions unsupported by facts or suffer from other pleading defects; accordingly, they should not be accepted as true for the purpose of this motion. Second, after setting aside assertions that are not entitled to an assumption of truth, the threadbare allegations that remain do not plausibly establish an agency relationship between Constellation and Alliance based on actual authority or apparent authority. Accordingly, the Complaint should be dismissed.

> A.  **Most of the Complaint's Agency Allegations Should Not Be Accepted As True.**

Perrong's allegations that Constellation is subject to vicarious liability can be boiled down to a mere *six* paragraphs of the Complaint (Compl. ¶ 19, 37–41)—and most of the assertions in

those six paragraphs should not be accepted as true for the purpose of this motion because they are either conclusory or contradictory.

First, the majority of Perrong's agency allegations should not be accepted as true because they are conclusory allegations unsupported by facts. *See* Compl. ¶¶ 19, 37–41. Allegations that an agency relationship exists or that recite the elements of agency, such as the existence of the principal's control over the agent, are not accepted as true on a motion to dismiss and do not plausibly establish vicarious liability under the TCPA.[3]

Most of the Complaint's agency allegations are precisely that: conclusions that Alliance was acting as Constellation's agent, without any supporting facts. The Complaint asserts, for example, that "Constellation engaged Alliance as its agent" (Compl. ¶ 19), and "[b]y hiring" Alliance, Constellation "manifested assent . . . that the agent shall act on the principal's behalf and subject to the principal's control" (Compl. ¶ 37). Such allegations are not accepted as true at the pleading stage. *See, e.g.*, *Naiman v. TranzVia LLC*, No. 17-cv-4813-PJH, 2017 WL 5992123, at *1, 11 (N.D. Cal. Dec. 4, 2017) (allegations that TranzVia "hired" a telemarketer "to act as its

---

[3] *See, e.g.*, *Barker v. Sunrun Inc.*, No. CV 18-855 KG/LF, 2019 WL 1983291, at *4 (D.N.M. Apr. 29, 2019) (allegations that calls "were directed by or at the behest of Sunrun and that these callers were in an agency relationship with Sunrun" were legal conclusions that "cannot be presumed to be true under a 12(b)(6) analysis"); *Aaronson v. CHW Group, Inc.*, No. 1:18-cv-1533, 2019 WL 8953349, at *3 (E.D. Va. Apr. 15, 2019) ("conclusory, boilerplate allegation" that the defendant "acted through its agents" was insufficient because the allegation "plainly fails to provide any *facts* to demonstrate an agency relationship") (emphasis in original) (internal quotations omitted); *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KM, 2018 WL 4684209, at *4 (D.N.M. Sept. 28, 2018) (allegations that the defendant "had the authority and responsibility to prevent or correct the unlawful telemarketing practices" "are not factual allegations but rather legal conclusions that merely recite the elements required to show an agency relationship") (internal quotations omitted); *see also Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 3709854, at *5 (D. Ariz. Aug. 20, 2021) ("[i]t is not enough to allege . . . that Grand Caribbean 'maintained the right' to control certain aspects of the" purported agent's conduct because "this is a conclusion, not a fact" and noting that courts "have not hesitated to dismiss TCPA claims" involving similar allegations).

7

agent," were insufficient because the plaintiff "must allege facts, not conclusions, and the court need not accept as true . . . conclusory allegations cast in the form of factual allegations").

Similarly, the assertion that Constellation "maintained interim control over the actions" of Alliance (Compl. ¶ 38) is an element of agency; accordingly, it is a legal conclusion that is not presumed true on a motion to dismiss. *See, e.g.*, *Cooley v. Freedom Forever, LLC*, No. 2:19-cv-562 JCM (NKJ), 2019 WL 8126847, at *4 (D. Nev. Nov. 25, 2019) (allegations that Freedom Forever "maintained interim control over Universal Energy's actions" were "bare, legal recitations and cannot state a plausible claim for relief") (internal quotations omitted); *see also Cunningham v. Health Plan Intermediaries Holdings, LLC*, No. 17-cv-1216, 2018 WL 835222, at *5 (N.D. Ill. Feb. 13, 2018) (allegation that defendants had "control over their agents' actions" did "not bring [the plaintiff's] claims across the line from the merely possible to the plausible") (internal quotations omitted); *Melito*, 2015 WL 7736547, at *7 (allegation that Experian had the right to control the sending of text messages "fails to plead an agency relationship . . . sufficient to allege vicarious liability under section 227(b)(1)(A)(iii) of the TCPA").

Second, Perrong's allegations regarding his call with Alliance are not entitled to an assumption of truth because those allegations are contradictory. *Compare* Compl. ¶¶ 30–32 *with* Compl. ¶¶ 39–40. Courts do not accept contradictory allegations within a complaint as true, particularly where the contradictory allegations are central to the plaintiff's theory of liability. *Beach*, 2012 WL 395316, at *4 (the plaintiff's "central allegation" was "not entitled to the assumption of truth" because it was "inconsistent with other allegations in the Complaint").

In *Chennette v. Porch.com, Inc.*, for example, the court refused to accept as true contradictory allegations regarding the nature of the phone number at issue, which was essential to establishing TCPA liability. No. 1:20-CV-00201-SRB, 2020 WL 9078129, at *2 (D. Idaho

8

Nov. 2, 2020). In one portion of the complaint, the *Chennette* plaintiffs alleged that the phone numbers at issue were residential phone numbers. *Id.* But other allegations throughout the complaint "undermine[d]" this assertion and instead supported that they were business numbers. *Id.* The court held that because of the plaintiffs' "own admissions" in the complaint, they had "pled themselves out of court." *Id.* at *3.

Similarly in *Childress*, the court held that the complaint failed to allege vicarious liability because the plaintiff's allegations were contradictory. 2018 WL 4684209, at *4. In one portion of the complaint, the plaintiff alleged that the defendant had placed the call, but elsewhere in the complaint, the plaintiff alleged that the caller never identified themselves. *Id.* The court held that "even by Plaintiff's own account, there is no factual basis to support the theory that Defendant is vicariously liable for the initial call made to Plaintiff." *Id.*

Here, Perrong's allegations regarding his phone call with Alliance should not be accepted as true because they contradict other allegations in the Complaint and are central to his theory of vicarious liability. In one portion of the Complaint, entitled "Factual Allegations," Perrong tells the story that after receiving the message from Alliance, he "contacted" Alliance (Compl. ¶ 30) and "inquired how [Alliance] obtained his phone number to make a pre-recorded call." Compl. ¶ 31. Perrong alleges that Alliance "did not respond" to his question. Compl. ¶ 32. Perrong tells a different story elsewhere in the Complaint, however, in the section attempting to establish Constellation's vicarious liability. There, Perrong alleges that when he "contacted [Alliance] about the pre-recorded call," Alliance "informed him that '[Constellation] has hired [Alliance], as its agent, and provided [Perrong's phone] number.'" Compl. ¶ 40; *see also* Compl. ¶ 39 (alleging that Constellation provided Alliance with the individuals to contact). This allegation directly

9

contradicts Perrong's prior description of his call with Alliance. Accordingly, these contradictory allegations should not be accepted as true.

B. **The Complaint Fails to Plead Facts Establishing Actual Authority.**

Stripped of its conclusory and contradictory allegations, the Complaint does not allege sufficient facts to establish that Alliance had actual authority to act as Constellation's agent. Actual authority exists where the principal "grants the agent authority to perform a particular act." *In re Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 520; *see also Georgetown Steel Corp.*, 1989 WL 156888, at *11. Courts generally recognize that actual authority has three elements: (1) the principal directs the agent to act for it; (2) the agent accepts the undertaking; and (3) the principal exercises control over the actions of the agent. *Person v. Lyft, Inc.*, 542 F. Supp. 3d 1342, 1351 (N.D. Ga. 2021).

The element of control is the "cornerstone of an agency relationship." *Georgetown Steel Corp.*, 1989 WL 156888, at *11; *see also Person*, 542 F. Supp. 3d at 1352 ("Control is the fulcrum of actual authority . . . .") (internal quotations omitted); *Rogers v. Postmates Inc.*, No. 19-cv-05619-TSH, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) ("In determining whether vicarious liability may be imposed, the extent of control exercised by the principal is the essential ingredient.") (internal quotations omitted). The "power to control the means and methods employed by the agent, and not just the result, distinguishes an agency relationship from that of an independent contractor." *Georgetown Steel Corp.*, 1989 WL 156888, at *11.

To state a vicarious liability TCPA claim based on actual authority, a plaintiff must allege facts establishing that the principal exercised control over the "manner and means of the calls made." *Rogers*, 2020 WL 3869191, at *4. "There are numerous forms of direct and circumstantial evidence of control that could satisfy the Plaintiff's burden: how the agent is paid; whether the principal provides equipment or other support to the agent; and, the principal's right to terminate

10

the agent." *Person*, at 542 F. Supp. 3d at 1352 (internal citation omitted). Failure to plead such facts, however, is fatal to a plaintiff's vicarious liability claim premised on actual authority. In *Rogers*, for example, the court granted Postmates' motion to dismiss because the plaintiff failed to plead actual authority. 2020 WL 3869191, at *5. In that case, there was no dispute that another entity, Bird Dog, had sent the text message at issue. *Id.* at *4. The court held that the plaintiff had failed to adequately plead that "Postmates exercised any control over the 'manner and means' in which Bird Dog executed the campaign on its behalf[,]" reasoning that:

> There are no allegations here that Postmates directed Bird Dog to send text messages as part of the marketing campaigns; that it dictated the content of any message or other communication sent by Bird Dog; that it identified or otherwise controlled to whom or how or when Bird Dog sent such communications; that it equipped Bird Dog with any technological capability or other insider information necessary for executing the marketing campaign; or even that it 'controlled' or 'directed' Bird Dog in any way. There is no allegation that Postmates communicated to Bird Dog that text messages could or should be part of the marketing campaign.

*Id.*

The Complaint here likewise fails to allege facts supporting any of the three elements of actual authority, and, as in *Rogers*, does not allege any facts establishing that Constellation exercised control over the "manner and means" in which Alliance placed phone calls. Indeed, the Complaint's allegations fall far short of that mark.

First, the fact that Alliance's phone call referenced a program to purchase Constellation stock (Compl. ¶ 28), is insufficient to establish Constellation's control over Alliance or that Alliance was acting as Constellation's agent. Courts repeatedly recognize that a phone call or text message referencing another company does not establish agency. *See Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020) (a text message from T-Mobile offering a free Subway sandwich did not establish that T-Mobile was Subway's agent); *Clemons v. State Farm Mut. Auto.*

11

*Ins. Co.*, No. 1:20-cv-1050, 2020 WL 4193997, at *4 (C.D. Ill. July 21, 2022) (allegations that "callers invoked the State Farm brand" were not sufficient to establish actual authority); *Rogers*, 2020 WL 3869191, at *1 (a text message sent by Bird Dog to recruit delivery drivers for Postmates did not establish that Bird Dog was Postmates' agent); *In re Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 527 ("the fact that [callers] were permitted to hold themselves out as [the defendants'] authorized dealers . . . is insufficient" to hold the defendants vicariously liable). It is easy to see why such allegations are insufficient to establish an agency relationship: "every bar which advertises that they sell a particular brand of beer is not the agent of the brewery whose name they advertise." *In re Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 527–28 (collecting cases). The same is true here. Perrong cannot assert an agency relationship simply because Alliance's call referenced Constellation.

Second, Perrong's allegations that Constellation "hired" or "engaged" Alliance (Compl. ¶¶ 19, 37, 40) also fail to plausibly establish agency. For the reasons explained above, such conclusory allegations should not be accepted as true, and Constellation disputes them.[4]

But even if these assertions are accepted as true, they are insufficient to establish actual authority because hiring or contracting with a third party does not establish control. *See Warciak*, 949 F.3d at 357; *Rogers*, 2020 WL 3869191, at *5 ("an allegation of a beneficial contractual relationship alone is insufficient to establish agency") (internal quotations omitted); *Clemons*, 2020 WL 4193997, at * 4 (allegation that State Farm contracted with telemarketers to contact

---

[4] Indeed, in a factually similar case, the plaintiff's conclusory allegations that the principal, Lyft, had "hired" the entity who placed the calls, Yodel, turned out to be wrong. *Person*, 542 F. Supp. 3d at 1351. The evidence ultimately showed that "Yodel was a subcontractor, hired not by Lyft but by other entities." *Id.* Because there were no additional facts establishing that Lyft exercised control over Yodel, the court held on a motion for judgment on the pleadings that the plaintiff "[could not] proceed on actual authority." *Id.* at 1352. Similarly, here, Constellation expects that Perrong's conclusory allegations that Constellation "hired" or "engaged" Alliance will not be borne out by the facts.

12

customers failed to establish control over the calls); *Cooley*, 2019 WL 8126847, at *3 (allegation that Freedom Forever "hired" Universal Energy was insufficient because "even assuming the existence of a contractual relationship, plaintiff fails to allege . . . Freedom Forever exercised the necessary control"); *Reo v. Caribbean Cruise Line, Inc.*, No. 1:14-cv-1374, 2016 WL 1109042, at *5 (N.D. Ohio Mar. 18, 2016) (allegation that CCL "retained the services" of telemarketers were insufficient to establish that CCL had the power to give interim instructions or exercised control); *Jackson*, 88 F. Supp. 3d at 138 (the existence of a contract was not sufficient to establish control).

The court in *Warciak* explained why a contract does not necessarily make one party the agent of the other. *See* 949 F.3d at 356. The plaintiff in *Warciak* alleged that Subway was vicariously liable for a text message from T-Mobile offering a free Subway sandwich. *Id.* The only conduct alleged by Subway, however, was "engaging in a contractual relationship with T-Mobile." *Id.* at 357. The court rejected the plaintiff's argument that "a commercial contractual relationship between two sophisticated businesses is tantamount to an agency relationship." *Id.* The court reasoned that, "[w]hile an agency relationship can be created by contract, *not all contractual relationships form an agency*." *Id.* (emphasis added). By way of example, "when a company wishes to place an advertisement in a circular, the publisher of the circular does not become the agent of the company." *Id.* Accordingly, the court held that allegations of a contract did not state a plausible claim for relief under a theory of vicarious liability. *Id.* Similarly, here, Perrong's allegations that Constellation "hired" or "engaged" Alliance are not sufficient to establish agency.

<u>Third</u>, Alliance's supposed representation to Perrong that it was acting as Constellation's agent (Compl. ¶ 40) does not advance the ball. As noted above, this allegation contradicts other allegations in the Complaint and should not be accepted as true. But even if assumed true, it still

13

fails to establish the existence of an agency relationship. In *Abante Rooter & Plumbing v. Farmers Group, Inc.*, the plaintiff similarly attempted to establish the existence of an agency relationship based on allegations that the caller "identified him or herself as acting on behalf of Farmers Insurance." No. 17-cv-03315-PJH, 2018 WL 288055, at *5 (N.D. Cal. Jan. 4, 2018). The court held that such allegations were not enough. As an initial matter, "[s]uch allegations say nothing about whether [the] defendant consented to those representations." *Id.* More importantly, according to the court, "such allegations indicate nothing about the amount of control, if any, [the] defendant purportedly exercised over the representatives." *Id.* Similarly, Alliance's supposed representation that it was acting as Constellation's "agent" does not indicate that Constellation consented to those representations or that Constellation in fact exercised control over Alliance's calls. Accordingly, this allegation does not establish an agency relationship.

Fourth, Alliance's supposed representation that Constellation provided Perrong's phone number and other phone numbers to Alliance (Compl. ¶¶ 38–39) is also insufficient. As discussed above, this allegation contradicts other allegations in the Complaint and should not be accepted as true. But even if assumed true, it again does not clear the hurdle of establishing that Constellation exercised control over the "manner and means" in which Alliance placed phone calls. *See Rogers*, 2020 WL 3869191, at *4. It does not establish, for example, any of the facts that were similarly missing in *Rogers*, such as that Constellation: (1) directed Alliance to make prerecorded message calls; (2) dictated the content of prerecorded messages; (3) controlled to whom or how or when Alliance sent prerecorded messages; (4) equipped Alliance with any technological capability to place prerecorded messages; or (5) controlled or directed Alliance in any way at all. *See id.* In short, even if accepted as true, providing phone numbers to Alliance does not establish Constellation's control over the manner and means of the calls placed by Alliance. *See id.*; *see*

14

*also Melito*, 2015 WL 7736547, at *6 (allegation that Experian "routes the campaign ready file to Archer," which contained a list of numbers to which texts would be sent, did not establish that Archer was Experian's agent or that Experian had the right to control the sending of texts) (internal quotations omitted).

Indeed, if anything, the Complaint establishes the opposite: that Alliance was in complete control of the program and the calls placed pursuant to the program. The message Alliance left for Perrong indicated that Alliance was the "manager" of the program about which it was calling. Compl. ¶ 28. The message further indicated that all questions should be directed to Alliance. *Id.* The message then provided Alliance's contact information and times when Alliance could be reached. *Id.* When Perrong called Alliance, Alliance did not refer the inquiry to Constellation or encourage Perrong to call Constellation; rather, Alliance addressed Perrong's inquiry. Compl. ¶¶ 30–32. Far from establishing that Constellation was in control of Alliance, this suggests that Alliance was in control of its own conduct and the program. *See Warciak*, 949 F.3d at 357. Similarly in *Warciak*, the court rejected the plaintiff's theory that Subway was subject to vicarious liability because "[t]he text message itself has numerous indications that T-Mobile maintained control over the content, timing, and recipients." *Id.*

The Complaint does not plausibly establish actual authority. Specifically, there are no facts suggesting that Constellation exercised control over Alliance. In fact, the Complaint's factual allegations establish the opposite: that Alliance was in complete control of the program it was calling Perrong about. Accordingly, the claim against Constellation should be dismissed.

### C. The Complaint Fails to Plead Facts Establishing Apparent Authority.

The Complaint also fails to plead sufficient facts to establish that Constellation is subject to vicarious liability based on apparent authority. Like actual authority, apparent authority arises

from a manifestation of the principal. *In re Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 523. But unlike actual authority, which arises from the principal's manifestation *to an agent*, apparent authority "results from a principal's manifestation of an agent's authority *to a third party*, regardless of the actual understanding between the principal and agent." *Auvil*, 92 F.3d at 230 (emphasis added). That manifestation by the principal to a third party must in turn instill the third party "with a reasonable belief that another individual is an agent of the principal." *In re Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 523. The "essential element" of apparent authority, therefore, is that there "must be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party." *Id.*

Because apparent authority arises from the principal's manifestation to a third party, it is a "well-established tenet that an agent cannot create his own authority to represent a principal[.]" *Auvil*, 92 F.3d at 230. Accordingly, "an agent's statements that he has such authority cannot, without more, entitle a third party to rely on his agency." *Id.*

Thus, to state a claim for vicarious liability under the TCPA based on apparent authority, the plaintiff must allege a manifestation by the alleged *principal* to the plaintiff, and cannot rely on representations by the alleged *agent*. *Warciak*, 949 F.3d at 357 (T-Mobile text message referencing Subway did not establish apparent authority because there was no manifestation by Subway); *Rogers*, 2020 WL 3869191, at *6 (Bird Dog text message referencing Postmates and providing a link to Postmates' website did not establish apparent authority because there was no manifestation by Postmates); *Clemons*, 2020 WL 4193997, at *5 (telemarketer's call referencing State Farm did not establish apparent authority because there was no manifestation by State Farm); *Cunningham*, 2018 WL 835222, at *6 (telemarketers' reference to products of the defendants and sending paperwork featuring the defendants' names did not establish apparent authority because

16

there was no manifestation by the defendants); *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 778 (N.D. Ill. 2014) (holding that the plaintiff's apparent authority theory failed because the plaintiff had no communications with the alleged principal).

Here, Perrong's vicarious liability claim based on apparent authority fails because he has not alleged a manifestation by *Constellation*; he has only alleged representations by *Alliance*. The Complaint alleges, for example, that Alliance described itself as Constellation's "agent." Compl. ¶ 40. But "statements by an agent are insufficient to create apparent authority." *Warciak*, 949 F.3d at 357. There are no allegations that Perrong ever spoke to Constellation, let alone that Constellation manifested to Perrong that Alliance was Constellation's agent. *Compare Smith*, 30 F. Supp. 3d at 778 (finding no apparent authority because the plaintiff never spoke to the alleged principal) *with Person*, 542 F. Supp. 3d at 1352-53 (finding that apparent authority was adequately pleaded where the plaintiff alleged that his counsel called Lyft (the alleged principal), and told Lyft about the prerecorded calls from Yodel (the alleged agent), yet the calls to the plaintiff continued). Absent this "essential element" of apparent authority—a manifestation by Constellation to Perrong— Perrong's vicarious liability claim based on apparent authority fails.

## CONCLUSION

For these reasons, Constellation requests that this Court grant its Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6) and dismiss Perrong's TCPA claims in their entirety with prejudice.

[*signatures on following page*]

Dated: August 16, 2022					Respectfully submitted,

*/s/ Sarah A. Zielinski*

Sarah A. Zielinski (*pro hac vice*)
Kali M. Yallourakis (*pro hac vice*)
**MCGUIREWOODS LLP**
77 West Wacker Drive, Suite 4100
Chicago, Illinois 60601-1818
(312) 849-8100
(312) 849-3690 Fax
szielinski@mcguirewoods.com
kyallourakis@mcguirewoods.com

Melissa O. Martinez (Fed. Bar No. 28975)
**MCGUIREWOODS LLP**
500 E. Pratt Street, Suite 1000
Baltimore, Maryland 21202-3169
(410) 659-4432
(410) 659-4482 Fax
mmartinez@mcguirewoods.com

***Counsel for Defendant Constellation Energy Corporation***